```
 1   Sophia Rios, CSB #305801
     BERGER MONTAGUE PC
 2   401 B Street, Suite 2000
     San Diego, CA 92101
 3   Tel: (619) 489-0300
     Fax: (215) 875-4604
 4   Email: srios@bm.net

 5   Beth E. Terrell, CSB #178181
     TERRELL MARSHALL LAW GROUP
 6   936 North 34th Street, Suite 300
     Seattle, Washington 98103
 7   Telephone: (206) 816-6603
     Facsimile: (206) 319-5450
 8   Email: bterrell@terrellmarshall.com

 9   [Additional Counsel Appear on Signature Page]

10   Attorneys for Plaintiff
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COOPER MOORE, on his own behalf and on behalf of others similarly situated, | Case No.: 21-cv-6117 |
| Plaintiff, | **COMPLAINT** |
| v. | **CLASS ACTION** |
| ROBINHOOD FINANCIAL LLC, a Delaware limited liability company, | **DEMAND FOR TRIAL BY JURY** |
| Defendant. | |

### I.   NATURE OF THE ACTION

1. Robinhood Financial LLC is an online investments brokerage service firm headquartered in Menlo Park, California. Robinhood sells products and services that enable users to invest commission free in stocks, exchange-traded funds, and options. Robinhood's products and services can be accessed through its mobile application or on its website. On its website, Robinhood touts that it is "on a mission to democratize finance for all."

2. To market its products and services, Robinhood created a referral program called "Refer a Friend." Robinhood encourages users to refer their contacts to the service by offering free stock for each successful referral. As soon as the user's contact signs up for Robinhood and

links his or her bank account, Robinhood credits both the referring user and the referred contact with reward stock—sometimes offering more than one free stock for each successful referral. Users can receive reward stocks worth up to $500 in each calendar year.

3. Robinhood's mobile application ("The Robinhood App") assists users in referring friends. All the user has to do is tap "Rewards" or "Earn Rewards" in the top right corner of the home page of The Robinhood App, tap "Invite Contacts", and tap "Invite" next to the contacts the user wants to refer. The Robinhood App also displays alerts to users within the application reminding them to "Invite Friends" to earn free stock. The refer-a-friend model is a powerful method of mass marketing. At very minimal cost, Robinhood achieves targeted, immediate, and extensive promotion of its brand.

4. Robinhood initiated and/or assisted in sending to Plaintiff a refer-a-friend text message while Plaintiff was a Washington resident.

5. Robinhood's conduct violated the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010 *et seq.*, which makes it illegal for a person to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service..." RCW 19.190.060.

6. "Assist the transmission" means "actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial electronic mail message or the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010.

7. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.* RCW 19.190.100; *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154-55 (Wash. 2017).

8. Plaintiff brings this action as a class action on behalf of persons who also received Robinhood's illegal spam texts. Plaintiff's requested relief includes an injunction to end these

practices, an award to Plaintiff and class members of statutory and exemplary damages for each illegal text, and an award of attorneys' fees and costs.

## II.   PARTIES

9. Plaintiff Cooper Moore is a citizen of Washington State, residing in King County, Washington.

10. Defendant Robinhood Financial LLC (Robinhood) is a Delaware Corporation with its principal place of business in Menlo Park, California. Robinhood is engaged in substantial business activities in the State of Washington and the United States, including, but not limited to initiating or assisting the transmission of the texts at issue in this case.

## III.   JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because (a) this is a proposed class action; (b) at least one member of the proposed class is a citizen of a state different than Defendant; (c) the number of members of the proposed class is not less than 100; and (d) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered and transacts business in this District and some or all of the unlawful acts giving rise to this Complaint occurred in this District.

## IV.   FACTUAL ALLEGATIONS

**A.   The CEMA prohibits initiating or facilitating commercial text messages.**

13. The CEMA originally precluded unwanted emails that contain false or misleading information.

14. The Washington legislature amended the CEMA to "limit the practice" of sending commercial text messages to cell phones. *Lyft*, 406 P.3d at 1152 (quoting WASH. LAWS OF 2003, CH. 137, § 1).

15. The CEMA prohibits persons conducting business in the state of Washington to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped

with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060(1).

16. The statute provides a private cause of action to persons who received texts in violation of CEMA to enjoin further violations. RCW 19.190.090.

17. A person who receives a text message in violation of the CEMA may bring a claim for damages under Washington's Consumer Protection Act (CPA), RCW 19.86 *et seq.*

18. To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

19. A violation of RCW 19.190.060 establishes all five elements of the CPA vis a vis RCW 19.190.060(2) (providing the practices prohibited under the statute "are matters vitally affecting the public interest" and "are not reasonable in relation to the development and preservation of business" and constitute "an unfair or deceptive act in trade or commerce and an unfair method of competition" for the purpose of applying the CPA). *See also Lyft*, 406 P.3d at 1155 (holding a violation of RCW 19.190.060 establishes the injury and causation elements of a CPA claim as a matter of law).

**B.     Defendant initiates or assists the transmission of commercial marketing texts.**

20. Defendant promotes its products and services through its "refer-a-friend" marketing program.

21. Defendant actively encourages its users to participate in its referral program by offering free stock to users who refer someone who then signs up for a Robinhood account. Users are encouraged to send referrals to as many people as possible in order to improve the odds that someone they refer actually signs up, resulting in free stock for the referrer.

22. The Robinhood App, which is designed and maintained from Defendant's headquarters in Menlo Park, initiates and assists in the transmission of illegal text messages using two primary methods.

23. Specifically, when a Robinhood user clicks on either "Rewards" or "Earn

4

COMPLAINT
*MOORE V. ROBINHOOD FINANCIAL LLC*

Rewards" in the Robinhood App, the user is then prompted to either "Invite Contacts" or "Share Link."

24. Clicking on either option[1] prompts the user to select individuals from the contacts stored on the user's phone to whom to send Robinhood commercial marketing text messages.

25. Once the contacts to whom the message will be sent are selected, the user's native text messaging application opens with a pre-composed text message directed to the selected recipient(s) containing Robinhood marketing content.

26. The pre-addressed text message includes an invitation to join Robinhood, a promise of free stock, and a referral link that allows Robinhood to identify the sender of the message.

27. All the user has to do is hit send and the message that Defendant composed is sent to the selected contacts.

28. Defendant substantially assists and supports its users in sending illegal text messages by, *inter alia*: a) encouraging and incentivizing its users to send referral messages by compensating them with free stock; b) technologically enabling its users to initiate referral text messages through the Robinhood App; c) suggesting which contacts should receive referral text messages when the user uses the "Share Contacts" method; d) composing the text messages; e) composing and providing unique user-specific referral links that a text recipient can use to sign up for Defendant's services; and f) formulating text and images to be sent as part of the refer-a-friend text messages.

29. Defendant does not obtain recipients' clear and affirmative consent in advance to receive the referral text messages and consciously avoids knowing whether its users send the commercial marketing text messages without obtaining recipients' clear and affirmative consent in advance to receive the referral text messages.

---

[1] If a Robinhood user selects "Invite Contacts," then the Robinhood App accesses the user's address book, displays the user's contacts in the Robinhood App, and sometimes recommends particular recipients. Using the "Share Link" method skips the step of the Robinhood App displaying these recommendations and instead directs the user to the native address book on the user's phone.

|   |   |
|---|---|
| 1 | 30.    Defendant does not inform its users that they should obtain any recipient's clear and affirmative consent in advance to receive the referral text messages. |

30.    Defendant does not inform its users that they should obtain any recipient's clear and affirmative consent in advance to receive the referral text messages.

31.    Defendant does not employ any controls from within the application to ensure that its users obtain recipient's clear and affirmative consent in advance to receive the referral text messages before enabling them to send the commercial marketing text messages.

**C.    Defendant initiated and assisted in the transmission of an illegal text message to Plaintiff.**

32.    At all times relevant to this Complaint, Plaintiff has resided in Washington State.

33.    At all times relevant to this Complaint, Plaintiff has subscribed to a cellular telephone number.

34.    Plaintiff's cellular telephone has the capacity to send and receive transmissions of electronic text messages.

35.    On March 14, 2018, Plaintiff received an unsolicited commercial electronic text message inviting him to sign up for Defendant's online brokerage services. The text, which included formulaic language and stock images, stated: "Join Robinhood and we'll both get a stock like Apple, Ford, or Sprint for free. Make sure you use my link."

36.    Below is a screenshot of the text Plaintiff received:



37. Plaintiff did not provide clear and affirmative consent in advance to receive the text message.

38. Plaintiff's privacy was invaded by the text messages he received promoting Defendant's products and services. Plaintiff did not understand why he was receiving annoying and harassing spam texts, which are a nuisance. Plaintiff responded to the text by saying, "Please stop sending me ads."

## V. CLASS ACTION ALLEGATIONS

39. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff brings this case as a class action on behalf of a Class defined as:

> All persons[2]:
>
> 1) to whose telephone number Defendant initiated or assisted in the transmission of one or more commercial electronic text messages as part of its referral program from August 9, 2017 through the date the Court certifies the Class;
>
> 2) where such message was sent while such person was a Washington resident; and
>
> 3) while the number to which the message was sent was assigned for cellular phone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages.

Excluded from the Class are any persons who initiated a commercial electronic text message as part of Defendant's referral program, Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

40. <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable. The Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

41. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. The common questions of law and fact include, but are not limited to:

---

[2] As that term is defined in RCW 19.190.010(11) and RCW 19.86.010(a)

       a.     Whether Defendant initiated the transmission of commercial electronic text messages to recipients residing in Washington State in violation of RCW 19.190.060;

       b.     Whether Defendant assisted the transmission of commercial electronic text messages to recipients residing in Washington State in violation of RCW 19.190.060;

       c.     Whether a violation of RCW 19.190.060 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq.*;

       d.     Whether Plaintiff and the proposed Class are entitled to an injunction enjoining Defendant from sending the unlawful texts in the future; and

       e.     The nature and extent of Class-wide injury and damages.

42.    <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

43.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff had retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and class actions involving unlawful text messages under Washington law. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests that are contrary to or that conflict with those of the proposed Class.

44.    <u>Predominance</u>. Defendant has a standard practice of initiating or assisting the transmission of commercial electronic text messages to subscribers of cellular telephone numbers residing in Washington State. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

45.    <u>Superiority</u>. Plaintiff and members of the Class have been injured by Defendant's unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and

efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable from Defendant's records and there will be no significant difficulty in the management of this case as a class action.

46. <u>Injunctive Relief</u>. Defendant's conduct is uniform as to all members of the Class. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Plaintiff further alleges, on information and belief, that the texts described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(Violations of Washington's Commercial Electronic Mail Act, RCW 19.190 *et seq*.)**

47. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular telephone or similar device.

49. Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

50. Defendant initiated or assisted the transmission of one or more commercial electronic text messages to Plaintiff and proposed Class members.

51. Defendant's acts and omissions violated RCW 19.190.060(1).

52. Defendant's acts and omissions injured Plaintiff and proposed Class members.

53. Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.060(1).

### SECOND CLAIM FOR RELIEF

**(*Per se* violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*.)**

54. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

55. Plaintiff and Class members are "persons" within the meaning of the CPA, RCW

19.86.010(1).

56. Defendant violated the CEMA by initiating or assisting in the transmission of an unsolicited commercial electronic text message to Plaintiff and Class members' cellular telephone or similar devices.

57. A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law. RCW 19.190.100 & *Lyft*, 406 P.3d at 1155.

58. Defendant's violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

59. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

60. Pursuant to RCW 19.19.040(1), damages to each recipient of a commercial electronic text message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law. *Lyft*, 406 P.3d at 1155.

61. Defendant engaged in a pattern and practice of violating the CEMA. As a result of Defendant's acts and omissions, Plaintiff and Class members have sustained damages, including $500 in statutory damages, for each and every text that violates the CEMA. The full amount of damages will be proven at trial. Plaintiff and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

62. Under the CPA, Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

## VII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, request judgment against Defendant as follows:

A. That the Court certify the proposed Class;

B. That the Court appoint Plaintiff as a Class Representative.

C. That the Court appoint the undersigned counsel as counsel for the Class;

D. That the Court should grant declaratory, equitable, and/or injunctive relief as permitted by law to ensure that Defendant will not continue to engage in the unlawful conduct described in this Complaint;

E. That, should the Court permit Defendant to engage in or rely on spam texting, it enter a judgment requiring them to adopt measures to ensure CEMA compliance, and that the Court retain jurisdiction for a period of at least six months to ensure that Defendant complies with those measures;

F. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the CEMA;

G. That Defendant be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify members of the Class;

H. That Plaintiff and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

I. That the Court enter an order awarding Plaintiff reasonable attorneys' fees and costs; and

J. That Plaintiff and all Class members be granted other relief as is just and equitable under the circumstances.

## VIII.  TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: August 8, 2021       Respectfully Submitted,

BERGER MONTAGUE PC

By: /s/ Sophia M. Rios, CSB #305801
  Sophia M. Rios, CSB #305801
  Email: srios@bm.net
  E. Michelle Drake (*Pro Hac Vice* Forthcoming)
  Email: mdrake@bm.net
  401 B Street, Suite 2000

|  |  |
|---|---|
| Dated: August 8, 2021 | San Diego, CA 92101<br>Tel: (619) 489-0300<br>Fax: (215) 875-4604<br><br>TERRELL MARSHALL LAW GROUP<br><br>By: /s/ Beth E. Terrell, CSB #178181<br>Beth E. Terrell, CSB #178181<br>Email: bterrell@terrellmarshall.com<br>Jennifer Rust Murray (*Pro Hac Vice* Forthcoming)<br>Email: jmurray@terrellmarshall.com<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103<br>Telephone: (206) 816-6603<br>Facsimile: (206) 319-5450<br><br>*Attorneys for Plaintiff* |

**ATTESTATION**

I, Sophia M. Rios, am the ECF User whose ID and password are being used to file the foregoing document. In compliance with Civil Local Rule 5-1(i)(3), I attest that concurrence in this filing has been obtained from all signatories above.

By:   /s/ *Sophia M. Rios*