KENNETH E. PAYSON (*Pro Hac Vice Pending*)
LAUREN B. RAINWATER (*Pro Hac Vice Pending*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone:     (206) 622-3150
Facsimile:     (206) 757-7700
Email:  kennethpayson@dwt.com
          laurenrainwater@dwt.com

KELLY M. GORTON (State Bar No. 300978)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:  kellygorton@dwt.com

Attorneys for Defendant
ROBINHOOD FINANCIAL LLC

DAVIS WRIGHT TREMAINE LLP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COOPER MOORE, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:21-cv-06117-JD<br><br>**DEFENDANT ROBINHOOD FINANCIAL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF**<br><br>Hearing Date:   October 21, 2021<br>Time:                10:00 am<br>Judge:              Hon.  James Donato<br>Courtroom:       Courtroom 11, 19th Floor<br><br>Action filed:  August 9, 2021 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.     INTRODUCTION AND ISSUES TO BE DECIDED........................................... 2

II.    STATEMENT OF RELEVANT FACTS .......................................................... 4

      A.    Plaintiff's Allegations ...................................................................... 4

III.   LEGAL STANDARD ....................................................................................... 4

      A.    Rule 12(b)(6) Motion to Dismiss ................................................... 4

      B.    The Commercial Electronic Mail Act ........................................... 6

IV.   ARGUMENT .................................................................................................... 6

      A.    Plaintiff's "Initiation" Claim Fails .................................................. 6

            1.    Plaintiff's Threadbare and Internally Inconsistent "Initiation" Allegations Fail to State a CEMA Claim ................................ 6

            2.    Plaintiff Cannot Remedy His Defective "Initiation" Allegations ................. 9

      B.    Plaintiff's "Assistance" Claim Fails.............................................. 10

            1.    Plaintiff's Threadbare "Assistance" Allegations Fail to State a CEMA Claim............................................................ 10

                  a.    Plaintiff Does Not Allege Sufficient Facts to Show Robinhood "Substantially Assisted" in Transmission of Text Messages ........................................................... 10

                  b.    Plaintiff Does Not and Cannot Allege Robinhood Had Requisite Knowledge Because Plaintiff Does Not and Cannot Allege Robinhood Users Conduct Business in Washington........................................................ 12

            2.    Plaintiff Cannot Cure the Defects in His "Assistance" Allegations and Should Not Be Granted Leave to Amend............................................. 13

      C.    Plaintiff's "Commercial Electronic Text Message" Claim Fails ........................... 13

            1.    Plaintiff Fails to Allege Facts to Support That the Sole Text Message He Received Constituted a "Commercial Electronic Text Message" ........................................................... 13

            2.    Plaintiff Cannot Cure This Defect in His Claims and Should Not Be Granted Leave to Amend ........................................................ 16

V.    CONCLUSION ................................................................................................ 17

DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
  2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ...............................................................7

*Adzhikosyan v. Callfire, Inc.*,
  2019 WL 7856759 (C.D. Cal. Nov. 20, 2019) ....................................................11, 12

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir.), *amended*, 856 F.2d 111 (9th Cir. Sept. 8, 1988) .................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................3, 5, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................3, 4, 5, 6

*Chesbro v. Best Buy Stores, L.P.*,
  697 F.3d 1230 (9th Cir. 2012) ..................................................................................16

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ........................................................................5, 10, 13

*Cour v. Life360, Inc.*,
  2016 WL 4039279 (N.D. Cal. July 28, 2016) ...........................................................8, 9

*De la Cabada v. Ytel, Inc.*,
  2020 WL 1156909 (N.D. Cal. Mar. 10, 2020) ...........................................7, 8, 11, 12

*In re Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) .......................................................................................7, 8

*Figueroa v. Everalbum, Inc.*,
  2018 WL 3399404 (N.D. Cal. May 9, 2018), *rev'd on other grounds*, 809 F.
  App'x 399 (9th Cir. 2020)............................................................................................9

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .....................................................10, 11

*Gabertan v. Walmart, Inc.*,
  2021 WL 843148 (W.D. Wash. Mar. 5, 2021) ..........................................................14

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014).......................................................................................7

*Gragg v. Orange Cab Co.*,
  2013 WL 195466 (W.D. Wash. Jan. 17, 2013) .....................................................7, 16

*Gragg, Wright v. Lyft, Inc.*,
  2016 WL 7971290 (W.D. Wash. Apr. 15, 2016) .......................................................16

DAVIS WRIGHT TREMAINE LLP

Case No.  3:21-cv-06117-JCS

DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

*Hickey v. Voxernet LLC*,
   887 F. Supp. 2d 1125 (W.D. Wash. 2012) ...............................................................13, 14, 15, 16

*Hickey v. Voxernet LLC*,
   No. C12–373 MJP, Dkt. 22-25 (W.D. Wash.) ........................................................................14

*Kay v. Copper Cane, LLC*,
   2021 WL 2953241 (N.D. Cal. July 14, 2021) ..........................................................................5

*Kennedy v. Bank of Am., N.A.*,
   2012 WL 1458196 (N.D. Cal. Apr. 26, 2012) ..........................................................................5

*McKenna v. WhisperText*,
   2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ...........................................................................9

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ..........................................................................9

*Phan v. Agoda Co. Pte. Ltd.*,
   798 F. App'x 157 (9th Cir. 2020)............................................................................................14

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   30 FCC Rcd. 7961 (2015), *abrogated in part on other grounds, ACA Int'l v.
   Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) .........................................................8

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ...............5

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)...................................................................................................15

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ..................................................................................................5

*Valley Surgical Ctr. LLC v. County of Los Angeles*,
   2015 WL 3825310 (C.D. Cal. June 18, 2015), *motion for reconsideration
   granted in part*, 2016 WL 2981757 (May 23, 2016) .............................................................5, 7

*Vallianos v. Schultz*,
   2019 WL 4980649 (W.D. Wash. Oct. 8, 2019) ......................................................................14

*Warciak v. Nikil, Inc.*,
   2017 WL 1093162 (N.D. Ill. Mar. 23, 2017) ...........................................................................9

*Wick v. Twilio Inc.*,
   2017 WL 2964855 (W.D. Wash. July 12, 2017).............................................................7, 8, 12

*Wofford v. Apple Inc.*,
   2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ..........................................................................14

*Wright v. Lyft, Inc.*,
   189 Wash. 2d 718 (2017) ...................................................................................................6, 16

iii

**Statutes**

47 U.S.C. § 227 (Telephone Consumer Protection Act) .......................................................... *passim*

California Civil Code § 1750 (Consumers Legal Remedies Act) .................................................14

Revised Code of Washington
    ch. 19.86 (Washington Consumer Protection Act) ........................................................ *passim*
    § 19.190.010(1) ....................................................................................................3, 10, 12
    § 19.190.010(3) ....................................................................................................3, 13, 15
    § 19.190.010(7) ...............................................................................................................2, 6
    § 19.190.040 ........................................................................................................................6
    § 19.190.060 (Washington Commercial Electronic Mail Act) ........................................ *passim*
    § 19.190.060(1) ........................................................................................................3, 6, 12
    § 19.190.060(2) .................................................................................................................13
    § 19.190.100 .................................................................................................................6, 10
    § 62A.2-106 ......................................................................................................................14

**Rules**

Federal Rules of Civil Procedure
    8 .............................................................................................................................................5
    11 .........................................................................................................................................2, 9
    12 .......................................................................................................................................4, 15
    12(b)(6) ............................................................................................................................2, 4, 5

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) ...................................................................................14

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS

1

## <u>NOTICE OF MOTION AND MOTION</u>

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3   NOTICE IS HEREBY GIVEN THAT on October 21, 2021, at 10:00 am, or as soon

4   thereafter as the matter may be heard before the Honorable James Donato in Courtroom 11, 19th

5   Floor of the Northern District of California (San Francisco Division), located at 450 Golden Gate

6   Avenue, San Francisco, CA 94102, Defendant Robinhood Financial LLC ("Robinhood") will and

7   through this Motion does move the Court under Federal Rule of Civil Procedure 12(b)(6) to enter

8   an order dismissing Plaintiff Cooper Moore's Complaint, and all causes of action alleged in it,

9   with prejudice.  Robinhood files this Motion to Dismiss the Complaint because Plaintiff fails to

10  state a claim upon which relief can be granted under the State of Washington's Commercial

11  Electronic Mail Act or the Washington Consumer Protection Act.  Leave to amend should not be

12  granted because the deficiencies in his complaint are not curable.

13

14  Dated:  September 16, 2021                  Respectfully submitted,

15                                              DAVIS WRIGHT TREMAINE LLP
                                                KELLY M.  GORTON
16

17                                              By:  /s/ *Kelly M.  Gorton*
                                                     KELLY M.  GORTON
18

19                                              Attorneys for Defendant
                                                ROBINHOOD FINANCIAL LLC

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO DISMISS                          Case No.  3:21-cv-06117-JCS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND ISSUES TO BE DECIDED

Defendant Robinhood Financial LLC ("Robinhood") moves the Court under Federal Rule of Civil Procedure 12(b)(6) to decide whether Plaintiff Cooper Moore's Complaint alleges sufficient, non-conclusory facts to state a claim under (1) the Washington Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190.060; or (2) the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code ch. 19.86, predicated on violation of CEMA.

Plaintiff sued Robinhood over a single text message he allegedly received that invited him to "[j]oin Robinhood," a commission-free investment brokerage service, and offered him free stock should he do so.  Plaintiff admits that this text message was sent by a Robinhood user—not by Robinhood.  Compl. ¶¶ 20-28 (explaining how users initiate refer-a-friend text messages), 36 (depicting referral text message Plaintiff received from individual saved in his phone contacts as "Stephanie").  Plaintiff does not (because he cannot consistent with Rule 11) allege that Robinhood asserted any control over whether any particular Robinhood user might or might not have chosen to send through his or her own mobile device, to any of his or her own personal contacts, at a time of his or her choice, an invitation to "join Robinhood."  Nevertheless, Plaintiff alleges that the text message he received from one of his personal contacts violated CEMA and the CPA because he purportedly did not agree to receive the text.

Plaintiff further alleges in conclusory fashion that Robinhood "initiated or assisted in the transmission" of the text message to him, contradicting his more specific admissions that one of his personal contacts sent the relevant text message to him, *id*. ¶ 36, and Robinhood users, not Robinhood, sent the text messages about which he complains on behalf of a putative class.  *See id*. ¶¶ 20-28.  The Court should reject these conclusory and conflicting allegations and dismiss the Complaint for the following independent reasons:

*First*, the Complaint fails to plausibly allege the element of Plaintiff's CEMA claim that Robinhood "initiated" the at-issue text messages.  Plaintiff cannot allege sufficient facts to meet the statutory definition of "initiate" because his Complaint admits that Robinhood was not the "original sender" of the text messages.  Wash. Rev. Code § 19.190.010(7).  Plaintiff's conclusory

DEFENDANT'S MOTION TO DISMISS

allegations that Robinhood initiated the text messages at issue are exactly that which the Supreme Court forbade in *Twombly* and *Iqbal*: threadbare recitations of the elements of a claim supported only by conclusory allegations.  These conclusory allegations contradict Plaintiff's admissions that Robinhood users—not Robinhood—decided whether to send referral text messages, to whom among their *personal* contacts to send such text messages, and when to send the text messages through their own mobile devices.

**Second**, Plaintiff also fails to plausibly allege, in the alternative, that Robinhood provided "substantial assistance" to anyone it knew or consciously avoided knowing was violating the CPA. Not only does Plaintiff fail to plead sufficient facts in support of his assertion that Robinhood "substantially assisted" with the transmission of the at-issue text messages, but he also fails to allege any facts whatsoever that Robinhood knew or consciously avoided knowing that Robinhood users sent text messages *in violation of the CPA* as CEMA requires.  Robinhood is liable for assisting in the transmission of a text only if it knows or avoids knowing that the initiator of the text is violating the CPA.  *See* Wash. Rev. Code § 19.190.010(1).  But Robinhood users cannot violate the CPA under CEMA unless they themselves "conduct[] business in the state."  Wash. Rev. Code § 19.190.060(1).  Plaintiff has not alleged—and cannot plausibly allege—that Robinhood users sending refer-a-friend texts are conducting business in Washington.  He therefore cannot allege that Robinhood users have violated CEMA or the CPA by sending the text messages at issue.  Additionally, because Plaintiff cannot allege that Robinhood users violated the CPA, he therefore cannot allege that Robinhood knew or consciously avoided knowing that the users engaged in a practice that violated the CPA—an essential element of a CEMA claim.  Wash. Rev. Code § 19.190.010(1).

**Third**, the Complaint fails to allege facts to support Plaintiff's allegation that the text message he received constituted a "commercial electronic text message."  CEMA limits the definition of such a message to those "sent to promote real property, goods, or services for sale or lease."  Wash. Rev. Code § 19.190.010(3).  But Plaintiff does not allege that the message he received was sent to promote the sale or lease of any real property, goods, or services.  Nor could he, because an offer of free stock to sign up for Robinhood's commission-free investment

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO DISMISS

Case No.  3:21-cv-06117-JD

services—untethered from any sale or lease of real property, goods, or services—cannot constitute a "commercial electronic text message" under CEMA.

## II.      STATEMENT OF RELEVANT FACTS

### A.      Plaintiff's Allegations

Plaintiff alleges that Robinhood initiated and/or assisted in sending to Plaintiff a refer-a-friend text message while Plaintiff was a Washington resident.  Compl. ¶ 4.  He further alleges that Robinhood operates a refer-a-friend program in which users of the Robinhood brokerage service can send text messages offering recipients free stock if those recipients create a free Robinhood account.  *Id.* ¶¶ 20-21.  Plaintiff admits that the individual Robinhood user, not Robinhood, selects the recipient of the text message "from the contacts stored *on the user's* phone" and transmits the text message through the user's own mobile device.  *Id.* ¶¶ 24, 27 ("the *user has to* … hit send") (emphasis added).

Despite repeatedly acknowledging that Robinhood users decide whether and, if so, when and to whom among their own contacts they wish to send invitations to join the Robinhood commission-free brokerage service, Plaintiff inconsistently alleges that he received a text message on March 14, 2018 that was "initiated and/or assisted" by Robinhood in violation of CEMA and the CPA.  *Id.* ¶¶ 4, 35.  Significantly, Plaintiff does not allege that Robinhood is the original sender of any text message or that it has any control over whether any particular Robinhood user chooses to invite anyone in his or her personal contact list and send that personal contact a text message through his or her own mobile device.

Plaintiff purports to bring his claim on behalf of a putative class of Washington residents who also received without their consent "commercial" electronic text messages that he claims Robinhood initiated or assisted in transmitting.  *See id.* ¶ 39.

## III.      LEGAL STANDARD

### A.      Rule 12(b)(6) Motion to Dismiss

Rule 12 exists to weed out undeserving complaints before parties engage in expensive discovery.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to

DAVIS WRIGHT TREMAINE LLP

1   relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.  662, 678 (2009) (quoting

2   *Twombly*, 550 U.S. at 570).  Rule 8's pleading standard "demands more than an unadorned, the-

3   defendant-unlawfully-harmed me accusation." *Id.*  To that end, "[t]hreadbare recitals of the

4   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see*

5   *also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (recognizing that the Court

6   does not need to "accept as true allegations that are merely conclusory, unwarranted deductions of

7   fact, or unreasonable inferences"), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

8          Similarly, "[f]actual allegations must be enough to raise a right to relief above the

9   speculative level …. [and cross the] line between possibility and plausibility of entitle[ment] to

10  relief." *Twombly*, 550 U.S. at 555–57.  Dismissal is proper based on "either the 'lack of a

11  cognizable legal theory' or on 'the absence of sufficient facts alleged' under a cognizable legal

12  theory." *Kay v. Copper Cane, LLC*, 2021 WL 2953241, at *2 (N.D. Cal. July 14, 2021) (quoting

13  *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013)).  This

14  Court need not accept as true "naked assertions devoid of further factual enhancement" or

15  internally inconsistent or contradictory allegations.  *Iqbal*, 556 U.S. at 678 (citation & internal

16  quotation marks omitted); *Valley Surgical Ctr. LLC v. County of Los Angeles*, 2015 WL 3825310,

17  at *6 (C.D. Cal. June 18, 2015) ("Although the Court should take the facts as pled in the light most

18  favorable to the plaintiff, it need not accept internally inconsistent facts as true."), *motion for*

19  *reconsideration granted in part*, 2016 WL 2981757 (May 23, 2016); *Kennedy v. Bank of Am.,*

20  *N.A.*, 2012 WL 1458196, at *4 (N.D. Cal. Apr. 26, 2012) ("While the Court does not determine

21  the truth of the allegations on a motion to dismiss, the Court need not accept allegations that are

22  contradicted by other allegations in the complaint or by the documents attached thereto.").

23         On a Rule 12(b)(6) motion, a district court need not grant leave to amend if "it determines

24  that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss &*

25  *Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Additionally, where

26  the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive

27  law, the court may deny leave to amend.  *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir.),

28  *amended*, 856 F.2d 111 (9th Cir. Sept. 8, 1988).

DAVIS WRIGHT TREMAINE LLP

Case No.  3:21-cv-06117-JD

### B.   The Commercial Electronic Mail Act

CEMA provides two pathways for a plaintiff to state a violation of CEMA's text messaging restrictions:  liability extends to any "person conducting business" in the state who either (1) "initiate[s]" or (2) "assist[s] in" the "transmission of an electronic commercial text message" to a telephone number assigned to the cell phone or pager of a Washington resident. Wash. Rev. Code § 19.190.060(1).  CEMA does not provide a private right of action to seek damages for violation of its restrictions on commercial electronic text messaging. *See Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 727 (2017) ("RCW 19.190.040 does not create an independent cause of action for monetary damages under CEMA.").  Instead, a violation of CEMA constitutes an "unfair or deceptive act in trade or commerce" for purposes of applying the CPA.  Wash. Rev. Code § 19.190.100; *see also Wright*, 189 Wash. 2d at 727 ("CEMA's plain language demonstrates the legislature's intent that the recipient of unsolicited text messages bring a CPA claim.").

### IV.   ARGUMENT

### A.   Plaintiff's "Initiation" Claim Fails

#### 1.   Plaintiff's Threadbare and Internally Inconsistent "Initiation" Allegations Fail to State a CEMA Claim

Plaintiff's conclusory and internally inconsistent allegations that Robinhood initiated the text messages at issue fall far short of federal pleading standards.  CEMA defines "[i]nitiate the transmission" as "the action by the ***original sender*** of an … electronic text message."  Wash. Rev. Code § 19.190.010(7) (emphasis added).  Plaintiff does not and cannot allege that Robinhood is the "original sender" of the text messages.  *Id*.  Instead, the Complaint contains only two allegations regarding Robinhood's supposed initiation of the text messages:

- "Robinhood initiated and/or assisted in sending to Plaintiff … while Plaintiff was a Washington resident." Compl. ¶ 4.

- "The Robinhood App …  initiates and assists in the transmission of illegal text messages …."  *Id*. ¶ 22.

But these allegations offer only "labels and conclusions" and provide too little beyond "formulaic recitation of the elements of a cause of action" to state cognizable CEMA violations.  *Twombly*, 550 U.S.  at 554–55.

DEFENDANT'S MOTION TO DISMISS

Plaintiff's bare allegations that Robinhood initiated the messages also conflict with Plaintiff's repeated admissions that Robinhood users sent the text messages at issue.  *See* Compl. ¶¶ 23-27 ("Specifically, when a Robinhood user clicks on either 'Rewards' or 'Earn Rewards' … the user is then prompted to either 'Invite Contacts' or 'Share Link'."  The user "select[s] individuals from the contacts stored on the user's phone." Then "the user has to … hit send[.]").  This Court should reject Plaintiff's internally inconsistent allegations that Robinhood both initiated *and* assisted with the transmission of text messages given Plaintiff's numerous admissions that individual users are the "original senders" of the text messages about which Plaintiff complains.  *See Valley Surgical Ctr. LLC*, 2015 WL 3825310, at *6 (C.D. Cal. June 18, 2015) ("Although the Court should take the facts as pled in the light most favorable to the plaintiff, it need not accept internally inconsistent facts as true.").

Additionally, this interpretation of the term "initiate" is consistent with settled case law under the Telephone Consumer Protection Act ("TCPA").[1]  The Federal Communications Commission—the federal agency charged with rulemaking authority over the TCPA—has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call."  *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013); *see also Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) ("For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call.")[2] (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)); *De la Cabada v. Ytel, Inc.*, 2020 WL

---

[1] "Because the TCPA's prohibition against unsolicited communications advertising property, goods, or services is substantially similar to the CEMA prohibition, the Court applies the federal interpretations of the TCPA when considering this claim." *Wick v. Twilio Inc.*, 2017 WL 2964855, at *5 (W.D. Wash.  July 12, 2017); *see also Gragg v. Orange Cab Co.*, 2013 WL 195466, at *4 n.4 (W.D. Wash.  Jan.  17, 2013) ("interpretive rulings" of the TCPA "should be applied to [CEMA]").

[2] Here there are no allegations that Robinhood exerts any control over its users and their decisions to send text messages to personal contacts. *See Abante Rooter*, 2018 WL 288055, at *4 ("Plaintiff's complaint is devoid of factual allegations from which the court could infer defendant controlled or could control the representatives.")

DEFENDANT'S MOTION TO DISMISS

1156909, at *3, n.5 (N.D. Cal. Mar. 10, 2020) (FCC "uses 'to make a call' and 'to initiate a call' interchangeably; that is, the terms have the same meaning and legal effect"). In other words, for liability as an initiator, the defendant must physically send the text or directly control the sending of the text. Yet Plaintiff fails to allege any plausible facts that would support that Robinhood took *any* "steps necessary to physically" send the text messages at issue. *See Wick*, 2017 WL 2964855, at *3; *Dish Network, LLC*, 28 FCC Rcd. at 6583 ¶ 26; *see also De la Cabada*, 2020 WL 1156909, at *4.

This District and other courts throughout the country uniformly conclude that defendants have not "initiated" text messages in similar circumstances under the TCPA. For example, *Cour v. Life360, Inc.*, 2016 WL 4039279 (N.D. Cal. July 28, 2016), involved a mobile application that allowed users to communicate with and see the location of friends and family members. To determine whether the app operator "initiated" the text messages, the Court first turned to FCC guidance in *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015), *abrogated in part on other grounds*, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("2015 FCC TCPA Ruling"). In that ruling, the FCC concluded that, with regard to texts sent through the TextMe app, "the app user and not TextMe is the maker of the invitational text message" where "before an invitational text is sent, '[a]n app user must: (1) tap a button that reads "invite your friends"; (2) choose whether to "invite all their friends or [] individually select contacts"; and (3) choose to send the invitational text message by selecting another button.'" *Cour*, 2016 WL 4039279 at *3 (quoting 2015 FCC TCPA Ruling ¶¶ 36–37). Turning to the sufficiency of the *Cour* complaint, the Court observed that the allegations established that "users choose which of their contacts should receive an invitation and then press an 'invite' button before invitations are sent." *Id.* at *3. Thus, "[a]s the FCC found regarding TextMe, these affirmative choices by the app user lead this Court to conclude that it is the app user who initiates the invitation and, therefore, is the maker of the call. Life360 is not the maker of the call and, consequently, cannot be liable under the TCPA." *Id.* at *4 (citation & internal quotation marks omitted). The Court therefore dismissed the TCPA claim with prejudice given that amendment would be futile.

DAVIS WRIGHT TREMAINE LLP

8

Case No.  3:21-cv-06117-JD

Similarly, in *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018), the Court granted a motion to dismiss with prejudice and held that the defendant did not initiate the text messages at issue where plaintiff's allegations indicated "that the app users … initiated the text messages because they, and not Yelp, decided whether, when, and to whom to send the text messages."  Other cases are in accord.  *E.g.*, *McKenna v. WhisperText*, 2015 WL 5264750, at *1, 4–5 (N.D. Cal. Sept. 9, 2015) (dismissing with prejudice TCPA claim and concluding that defendant was not the "initiator" of the text messages where "the Whisper App allows users to select contacts and invite those contacts by SMS text to try Whisper for themselves"); *Figueroa v. Everalbum, Inc.*, 2018 WL 3399404, at *3 (N.D. Cal. May 9, 2018) ("[T]he Court finds here that Ever is not the maker or initiator of the unsolicited text messages, but rather it is the App user who affirmatively decides whether and to whom to initiate the invitational text messages."), *rev'd on other grounds*, 809 F. App'x 399 (9th Cir. 2020); *Warciak v. Nikil, Inc.*, 2017 WL 1093162, at *4 (N.D. Ill.  Mar. 23, 2017) (granting motion to dismiss, holding that "Warciak's allegations make it clear that users of the Down to Lunch app initiate the *invitations*"). Here, Plaintiff admits that Robinhood users alone decide whether, when, and to whom to send invitations for free stock.  Compl. ¶¶ 3, 23-24, 27-29.  Identical to *Cour*, the users clicked "Invite Contacts" (or "Share Link"), selected their recipients, and physically sent the text message.  If you would like to further discuss these matters by phone, we can do so during our scheduled call tomorrow, January 10, 2019, or on another date at your convenience.

¶¶ 23-24, 27.  Following the substantial case law cited above, the Court should likewise hold that Robinhood cannot have "initiated" the at-issue text messages.  Plaintiff's CEMA "initiation" claim should be dismissed.

### 2.      Plaintiff Cannot Remedy His Defective "Initiation" Allegations

Plaintiff cannot cure his CEMA "initiation" claim by amendment.  Plaintiff's Complaint extensively alleges—correctly—that Robinhood users, not Robinhood, initiate the text messages at issue.  *Id.* ¶¶ 3, 23-24, 27-29.  Robinhood users, not Robinhood, either invite contacts that the user has selected from the personal contacts stored on the user's phone or share a link.  *Id.* ¶¶ 23-24.  Plaintiff does not and cannot, consistent with Rule 11, allege that Robinhood was the original

DAVIS WRIGHT TREMAINE LLP

9

DEFENDANT'S MOTION TO DISMISS

Case No.  3:21-cv-06117-JD

sender of any text messages or that it exercised any control over Robinhood users' individual

decisions about the recipients and/or timing of text messages they alone decided whether, when,

and to whom to send.  No plausible set of facts exists that would support Plaintiff's claim that

Robinhood "initiated" commercial electronic text messages in violation of CEMA.  Accordingly,

Plaintiff's CEMA "initiation" claim should be dismissed with prejudice, as amendment would be

futile.  *Cook, Perkiss & Liehe*, 911 F.2d at 247.

### B.   Plaintiff's "Assistance" Claim Fails

#### 1.   Plaintiff's Threadbare "Assistance" Allegations Fail to State a CEMA Claim

As with Plaintiff's CEMA "initiation" claim, Plaintiff's allegations that Robinhood

"assisted in the transmission" of the text messages at issue also fall short of federal pleading

standards.  "Assist[ing] in the transmission" of a commercial electronic text message in violation

of CEMA requires ***both*** (i) "substantial assistance or support which enables any person to

formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or

a commercial electronic text message," ***and*** (ii) that "the person providing the assistance knows or

consciously avoids knowing that the initiator of the commercial electronic mail message or the

commercial electronic text message is engaged, or intends to engage, in any practice that violates

the consumer protection act."  Wash. Rev. Code § 19.190.010(1).  Here, Plaintiff merely parrots

the elements of the statutory definition, Compl. ¶¶ 5-6, and fails to support his conclusory

allegations with even the most basic facts.  Moreover, Plaintiff cannot establish assistance liability

because he *cannot* satisfy the second prong of this two-part test because he does not allege that the

initiators of the text messages, i.e., Robinhood users, are engaged in any practice that violates the

CPA.

##### a.   Plaintiff Does Not Allege Sufficient Facts to Show Robinhood "Substantially Assisted" in Transmission of Text Messages

A recent Eastern District of Washington decision confirmed that not all assistance rises to

the level of "substantial assistance" required for liability under CEMA.  Wash. Rev. Code

§ 19.190.100; *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *3 (E.D. Wash. Oct. 1,

2019) (dismissing complaint for failure to allege that defendant assisted in transmission of text

1    messages).  In *Frank*, the court found that the defendant, Springbig, provided some assistance,

2    "*i.e.* the software application used to send the text messages" at issue, but that the plaintiff had

3    failed to allege any facts showing it provided *substantial* assistance, "which is required by the

4    statute." *Id.* at *3.  Similarly here, plaintiff does not allege facts showing that Robinhood

5    substantially assisted in the transmission of the text messages; Robinhood users were empowered

6    to decide whether, when, to whom, and on what personal device to send the text messages.

7            Instructive here, the court in *Frank* also found no liability under the analogous TCPA,

8    where "[t]here are no allegations that Defendant Springbig exercised ***any discernible involvement***

9    in deciding whether, when, or to whom the text message is sent, or what the text message said."

10   *Id.* at *2 (emphasis added).  Similarly, in *De la Cabada*, after finding that defendant did not

11   initiate the texts and calls, in deciding whether it was "*otherwise* so involved with a

12   communications as to be deemed to have made them for TCPA liability purposes" (similar to

13   "assistance" liability under CEMA), the Court found that plaintiff asserted "no factual allegations

14   that plausibly support an inference that Ytel created the content of the communications, or

15   determined when, how, and to whom the communications were sent."  2020 WL 1156909, at *4.

16   The Court noted that the FCC considered several factors in analyzing whether there is sufficient

17   involvement in transmission for liability,[3] including: "(1) who creates the content of the messages;

18   (2) who decides 'whether, when or to whom' a message is sent; (3) 'the extent to which a person

19   willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking

20   Caller ID, by offering either functionality to clients'; and (4) 'whether a person who offers a

21   calling platform service for the use of others has knowingly allowed its client(s) to use that

22   platform for unlawful purposes.'"  *Id.*

23           Here, although Plaintiff alleges that Robinhood created the content of the text messages, he

24   admits that Robinhood users—not Robinhood—decided whether, when, how, and to whom to

25   send the at-issue text messages.  Compl. ¶¶ 23-25; *accord Frank*, 2019 WL 4855378, at *3 and

26   *Adzhikosyan v. Callfire, Inc.*, 2019 WL 7856759, at *3 (C.D. Cal. Nov. 20, 2019) (finding

27

28   ---
     [3] The Court also noted that "involvement" liability generally applies with respect to platforms that
     facilitate mass calling or texting.  *Id.*

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO DISMISS

Case No.  3:21-cv-06117-JD

sufficient for dismissal that plaintiff did not allege that defendant decided whether, when or to whom to send messages). The court in *Adzhikosyan* also appropriately distinguished the decision in *Wick v. Twilio Inc*., 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017), regarding TCPA liability on the basis that the plaintiff in *Wick* alleged that Twilio, a cloud-based texting service provider, "created messages ***and*** chose their order and timing" along with "what number a message will be sent from in order to prevent messages from being filtered or rejected."[4] 2019 WL 7856759 at *2, 3 (emphasis added). Plaintiff here alleges no such involvement or "assistance" by Robinhood. He does not allege that Robinhood chose the order, timing, or sender of the text messages, nor any other "functionality" which may aid in "fraudulent spoofing" or the like.

Indeed, this case is nothing like *De la Cabada*, where the defendant platform facilitated bulk calls and text messages that aided a known offender of the TCPA, who already had an FCC citation. 2020 WL 1156909, at *4. The Complaint merely alleges—correctly—that Robinhood provided its users an opportunity to decide whether to share a chance to earn free stock with their own personal contacts and, if they so chose, whether to do so by email, text message, or other means through their own mobile device. Compl. ¶ 24 n.1.

### b.   Plaintiff Does Not and Cannot Allege Robinhood Had Requisite Knowledge Because Plaintiff Does Not and Cannot Allege Robinhood Users Conduct Business in Washington

Robinhood is liable for assisting in the transmission of a text message only if it knows or avoids knowing that the initiator of the text is violating the CPA. *See* Wash. Rev. Code § 19.190.010(1). But Robinhood users cannot violate the CPA under CEMA unless they themselves "conduct[] business in the state." Wash. Rev. Code § 19.190.060(1). Plaintiff has not alleged—and cannot plausibly allege—that Robinhood users who sent referral text messages conduct business in Washington. Without such allegations, Robinhood's users cannot send commercial electronic text messages in violation of CEMA and the CPA. As a result, Robinhood cannot know or consciously avoid knowing that its users engage in practices that violate the CPA.

---

[4] Notably, the court in *Wick* twice dismissed Plaintiff's CEMA claim.

DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

*Cf.* Wash. Rev. Code § 19.190.060(2) (a violation of CEMA is an unfair or deceptive practice in trade or commerce under the CPA).

In other words, ***it is not a violation of CEMA*** to provide assistance to individuals who are ***not conducting business in Washington*** and who therefore cannot possibly violate CEMA themselves.  Robinhood cannot violate CEMA by assisting the senders (Robinhood users), because the senders—whom Plaintiff does not and cannot allege conduct business in Washington—cannot themselves violate CEMA or the CPA.

### 2. Plaintiff Cannot Cure the Defects in His "Assistance" Allegations and Should Not Be Granted Leave to Amend

Plaintiff cannot cure the defects in his "assistance" claim because he cannot plausibly allege that Robinhood users conduct business in the state so as to come under the purview of CEMA.  Leave to amend should therefore be denied.  *Cook, Perkiss & Liehe*, 911 F.2d at 247.

### C. Plaintiff's "Commercial Electronic Text Message" Claim Fails

### 1. Plaintiff Fails to Allege Facts to Support That the Sole Text Message He Received Constituted a "Commercial Electronic Text Message"

Plaintiff's complaint fails for a third, independent reason:  the Complaint does not allege any facts in support of an essential element of its CEMA claims—that the text messages at issue are "commercial."  Wash. Rev. Code § 19.190.060.  CEMA prohibits transmitting a "commercial electronic text message" without the recipient's consent.  *Id.*  The legislature limited the definition of a "commercial electronic text message" to messages "sent to promote real property, goods, or services ***for sale or lease***."  Wash. Rev. Code § 19.190.010(3) (emphasis added); *see also Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1132 (W.D. Wash. 2012).  Thus, to survive a motion to dismiss, a plaintiff must include plausible factual allegations that the offending text promoted real property, goods, or services for lease or sale.

Most pertinent here, in *Hickey*, the plaintiff brought a CEMA claim alleging that he received a text that stated "Get on Voxer" and provided recipients with a link to download "Voxer," a social networking app for smartphones.  *Hickey*, 887 F. Supp. 2d at 1128.  But the plaintiff "nowhere alleg[ed] that consumers pay money for Voxer."  *Id.* at 1132.  Nor did plaintiff

"remedy this deficiency by providing screenshots of the Voxer application download screen containing the word 'purchasing.'" *Id.*  Dismissing plaintiff's CEMA claim, the court held that CEMA means what it says—a free app is not for "sale or lease."  *Id.* at 1132–33.  And a sale, the court said, requires the "passing of title from the seller to the buyer for" "***a price in money paid or promised***."  *Id.* at 1132 (emphasis added) (quoting Wash. Rev. Code § 62A.2-106 & Black's Law Dictionary (9th ed. 2009)).  That the transaction might indirectly involve some "intangible consideration" like "telephone data charges or agreement to pay ...  in the future" was irrelevant. *Id.*  "Since [plaintiff] does not allege that downloading [the app] free of charge constitutes a 'sale' ... Plaintiff's CEMA claim is DISMISSED with leave to amend."  *Id.* at 1132–33.  Plaintiff chose not to amend.  *See Hickey v. Voxernet LLC*, No. C12–373 MJP, Dkt. 22-25 (W.D. Wash.).

Other courts in the Ninth Circuit addressing similar statutory language agree.  In *Wofford v. Apple Inc.*, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011), the court considered whether a free iPhone software download constituted a "sale or lease" for purposes of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750.  The court held that "Plaintiffs fail to state a claim under the CLRA, because the *free* download of iOS4 on Plaintiffs' Third Generation iPhone does not meet the CLRA's 'sale or lease' requirement.... it was provided free of charge." 2011 WL 5445054, at *2 (citation omitted); *see also Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157, 158 (9th Cir. 2020) ("Nor do the text messages constitute 'telemarketing' because they do not evince a 'purpose of encouraging the purchase or rental of, or investment in, property, goods, or services'" under the TCPA.  "The messages contain no content encouraging the purchase of any of Agoda's services."); *Gabertan v. Walmart, Inc.*, 2021 WL 843148, at *5 (W.D. Wash. Mar. 5, 2021) ("Walmart argues persuasively that" inclusion of a link to its website "without more, does not render a message adverting [sic] or telemarketing."); *Vallianos v. Schultz*, 2019 WL 4980649 at *3 (W.D. Wash. Oct. 8, 2019) ("the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation").

Here, as in *Hickey*, Plaintiff "nowhere alleges that consumers pay money" to accept the "free stock" offer, nor does he allege that he would need to pay to use Robinhood's commission-free services generally.  Plaintiff does not allege facts that would, if proved, establish that the text

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO DISMISS

Case No.  3:21-cv-06117-JD

message was sent "to promote real property, goods, or services for sale or lease." Wash. Rev.
Code § 19.190.010(3). Instead, Plaintiff merely parrots the statutory language and labels the text
messages at issue "commercial" without any support or explanation. Compl. ¶¶ 5-6, 14, 24, 29,
31. Thus, dismissal is proper. *See Iqbal*, 556 U.S. at 678; *Hickey*, 887 F. Supp. 2d at 1133.

Admissions aside, documents that the Court may consider on a motion to dismiss further
confirm that granting leave to amend would be futile and this issue may be decided as a matter of
law under Wash. Rev. Code § 19.190.010(3), as applied in *Hickey*.[5] The webpage to which
Plaintiff's text links shows that the "free stock" offer was indeed ***free***, not tied to any form of "sale
or lease." Compl. ¶ 36: Robinhood, *There's A Free Stock Waiting For You*,
https://share.robinhood.com (last visited Aug. 19, 2021) (the "Linked Site").



An offer of free stock—untethered from any sale or lease of real property, goods, or
services—cannot constitute a "[c]ommercial electronic text message" under CEMA. *See* Wash.
Rev. Code § 19.190.010(3). Further, Plaintiff does not and cannot allege that it would have cost
him anything to sign up and claim his free stock offer, nor to use Robinhood's commission-free
services. Linked Site ("**Commission-free trading** Break free from commission-fees and make
unlimited commission-free trades in stocks, funds, and options with Robinhood Financial.");
Compl. ¶ 1 ("Robinhood sells products and services that enable users to invest commission free in
stocks, exchange-traded funds, and options…. On its website, Robinhood touts that it is 'on a
mission to democratize finance for all.'"). Plaintiff's ability to take advantage of the free stock

---

[5] The Complaint contains a screen capture of the single text message about which Plaintiff
complains. Compl. ¶ 36. The webpage accessible via the hyperlink contained in that screen capture
is properly considered under Rule 12 without converting the motion into one for summary judgment.
*See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (holding that the court may "consider
a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on
the document and its authenticity is unquestioned").

offer without payment of any sort, and without promotion of any other pay-for-use services, means the offer could not have been "sent to promote real property, goods, or services *for sale or lease*." *Id.* (emphasis added).

Those few cases that distinguish *Hickey* are inapposite here, only serving to confirm why *Hickey* governs the instant case.  The court in *Gragg v. Orange Cab Co.*, relying on *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230 (9th Cir. 2012) (a Washington Dialing and Announcing Device Act/TCPA case), distinguished *Hickey* on the basis that "a direct and immediate sale need not be in the offing to trigger" CEMA.  *Gragg*, 2013 WL 195466, at *4.  It found that "prohibiting unsolicited text messages that purport to offer a 'free' download or link designed to result in future purchases comports with the legislative findings and intent in enacting CEMA." *Id.*  Relying on *Gragg*, *Wright v. Lyft, Inc.*, 2016 WL 7971290 (W.D. Wash. Apr. 15, 2016), similarly found that although Lyft's text messages offered $25 in free rides using its application, which is free to join, it ultimately was "clearly intending that recipients would use their free app to access their for-profit services." *Id.* at *5.  The court in *Wright* importantly noted, however, that in *Hickey* "not only was the mobile phone app free, but Voxer (a software application that transformed the user's cell phone into a walkie-talkie) *itself was free*; i.e., there was no sale of a product or services to promote." *Id.* (emphasis added).  Equally here, Robinhood is a commission-free service and there "was no sale of a product or service[] for it to promote." *See, e.g.*, Compl. ¶ 1; Linked Site ("Commission-free trading").  Robinhood offered nothing more than free stock to "join" (for free) Robinhood, a commission-free service.  For this reason, Plaintiff did not and cannot plead more than its bare and unsupportable allegations, that the text messages at issue were "commercial." Compl. ¶¶ 5-6, 14, 24, 29, 31 (simply labeling the text messages at issue as "commercial marketing" texts).  For this reason alone, the Complaint should be dismissed.

### 2. Plaintiff Cannot Cure This Defect in His Claims and Should Not Be Granted Leave to Amend

Plaintiff cannot allege plausible facts to show the at-issue text message is a commercial electronic text message, a requirement for liability here.  Unlike the plaintiff in *Hickey*, Plaintiff concedes both that the stock offer was free and that Robinhood's services are offered commission

DAVIS WRIGHT TREMAINE LLP

16

DEFENDANT'S MOTION TO DISMISS

free.  Compl. ¶¶ 1, 35; *see also* Linked Site.  These concessions make dismissal with prejudice appropriate.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice, without leave to amend.  Plaintiff's CEMA claim is incurably flawed.  Plaintiff's CPA claim, which is premised on a CEMA violation, therefore also fails.

Dated:  September 16, 2021                    Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By:    /s/ *Kelly M. Gorton*
         KELLY M. GORTON
         KENNETH E. PAYSON
         LAUREN B. RAINWATER

Attorneys for Defendant
ROBINHOOD FINANCIAL LLC

17                    Case No.  3:21-cv-06117-JD

DEFENDANT'S MOTION TO DISMISS